**KOLLER LAW LLC**
David M. Koller, Esq. (PA 90119)
Jordan D. Santo, Esq. (PA 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICHOLAS BORAGI,**<br>**Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | **Complaint and Jury Demand** |
| **W HOTEL MANAGEMENT, INC.,**<br>**Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Nicholas Boragi (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against W Hotel Management, Inc. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), as amended, the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Philadelphia, PA.
3. Upon information and belief, W Hotel Management, Inc., is a corporate subsidiary of Marriott International, Inc. which owns and operates a chain of hotels, including with a location at 1439 Chestnut Street, Philadelphia, PA 19102 and with corporate headquarters

located at 7750 Wisconsin Avenue, Bethesda, MD 20814.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendants is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
12. Plaintiff exhausted his administrative remedies under Title VII, the PHRA and the PFPO.
13. On or about May 7, 2025, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation against Defendant.
14. The Charge was assigned a Charge Number 530-2025-05929 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").
15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated August 6, 2026. Plaintiff received the notice by electronic mail.
16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.
17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and more than one (1) year after filing the Charge but within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA and PFPO claims.
18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is Caucasian.

21. On or about June 4, 2024, Defendant hired Plaintiff in the position of Bartender.

22. Plaintiff was well qualified for his position and performed well.

## DEFENDANT DID NOT SCHEDULE PLAINTIFF FOR FULL-TIME HOURS AND MISCODED HIS PAYRATE

23. Upon Plaintiff's hire, Isai Xolalpa (Hispanic), Director of Restaurants, informed Plaintiff that he would be scheduled to work full-time hours.

24. However, Defendant only scheduled Plaintiff to work two (2) to three (3) shifts per week.

25. In addition, Defendant miscoded Plaintiff's payrate and did not fix it when he complained about it to management.

26. Upon information and belief, Defendant did not miscode the payrate or reduce the schedule of African American or Hispanic Bartenders.

## DEFENDANT SUBJECTED PLAINTIFF TO RACIALLY DISCRIMINATORY COMMENTS

27. Plaintiff was one of the few Caucasian employees at Defendant.

28. Throughout Plaintiff's employment, he was subjected to constant racial discrimination.

29. Plaintiff was subjected to racially discriminatory comments multiple times per week.

30. These comments included, but were not limited to, in or around mid-September 2024, X. LNU (African American), Barback, commented that "there aren't a lot of good white people around and maybe [Plaintiff] was one", or words to that effect.

31. In or around mid-November 2024, Josh Suber (African American), Food & Beverage Operations Manager, was speaking with Kaylan Last Name Unknown ("LNU"), Barback, while Plaintiff was making drinks.

32. Kaylan then stated to Plaintiff, "Hey [Plaintiff], this conversation isn't for you. It's brothers only", or words to that effect.

33. Suber smirked at Kaylan's discriminatory comment and took no action to address it.

**TWO (2) AFRICAN COWORKERS FREQUENTLY DID NOT PERFORM THEIR JOB DUTIES DURING PLAINTIFF'S SHIFTS**

34. In addition, Jasmine LNU (African American), Barback, refused to show up on time for Plaintiff's shifts, refused to perform her job duties during her shifts with Plaintiff and frequently disappeared for long periods of time during the shift.

35. Kaye LNU (African American), Server, also frequently disappeared during her shifts with Plaintiff, forcing him to complete her job duties as a Server, as well as his own job duties.

36. Plaintiff complained to management about Jasmine and Kaye's conduct, but it was not addressed.

37. Jasmine and Kaye did not do this to African American and/or Hispanic Bartenders, including, but not limited to, Jessica LNU (African American), Nestor LNU (Hispanic), and Wilfredo LNU (Hispanic).

**XOLALPA REFUSED TO DISCIPLINE OR TERMINATE AN AFRICAN AMERICAN EMPLOYEE WHO STOLE POOL AREA WRIST BANDS AND SOLD THEM TO NON-GUESTS**

38. In the summer of 2024, Gabby LNU (African American), Support Staffer, stole wristbands and sold them to non-guests on multiple occasions, so that they could enter the pool area and kept the money.

39. In addition, the non-guests who Gabby allowed in the pool area, were allowed to bring in outside alcohol and became intoxicated which violated Defendant's policies and procedures.

40. Xolalpa was aware of this, but he did not discipline or terminate Gabby.

41. Defendant did not terminate Gabby until Dana Gardner (Caucasian), Manager, complained about Gabby's conduct outside of the Food & Beverage Department.

**XOLALPA PROMOTED KAYE TO BARTENDER AND ASSIGNED HER PREFERENTIAL SHIFTS OVER PLAINTIFF**

42. In early October 2024, Xolalpa promoted Kaye to a Bartender position without posting the position which violated Defendant's policies and procedures.

43. Xolalpa did this despite Kaye not having any craft cocktail experience and little, if any, bartending experience which were requirements for the position.

44. Xolalpa proceeded to schedule Kaye on night shifts while Plaintiff was only scheduled for two (2) days per week, far from the full-time hours that he was hired for.

**PLAINTIFF COMPLAINED TO XOLALPA ABOUT RACE DISCRIMINATION**

45. On December 19, 2024, Plaintiff sent Xolalpa an email complaining about the issues with his schedule, miscoded payrate and the racial discrimination that he was subjected to.

46. However, Xolalpa did not respond to or address Plaintiff's complaint.

**A CUSTOMER PAID $141 CASH ON A $140 BILL AND ANOTHER BARTENDER CONDUCTED THE TRANSACTION ON THE REGISTER**

47. On the night of December 31, 2024, a customer paid $141 in cash on a $140 bill after Plaintiff had called him back, as the customer attempted to leave without paying.

48. Plaintiff showed how much the customer had paid to Samantha LNU (Caucasian), Bartender, and Eddie (African American), Barback.

49. Importantly, Samantha rang in the transaction while Plaintiff was approximately ten (10) feet away from the register.

**XOLALPA CALLED PLAINTIFF REGARDING $140 MISSING FROM THE DRAWER**

50. A couple of days later, Xolalpa called Plaintiff and informed him that the Finance Department had found a red flag because cash was missing from the drawer from his shift on December 31, 2024.

51. Plaintiff asked how much money was missing from the drawer and Xolalpa informed him that it was $140.

52. Plaintiff informed Xolalpa of the situation and notified him to check the cameras at approximately 2 a.m. on January 1, 2025.

**XOLALPA AND SUBER SUSPENDED PLAINTIFF PENDING INVESTIGATION INTO THE MISSING $140**

53. Approximately one (1) week later, Xolalpa called Plaintiff into his office with Suber.

54. Xolalpa informed Plaintiff that Defendant could still not find the $140.

55. Plaintiff asked Xolalpa and Suber if they had reviewed the security footage from his shift.

56. Xolalpa told Plaintiff that he had not reviewed the security footage.

57. Plaintiff suggested that they go to security and watch the security footage together.

58. However, Xolalpa stated to Plaintiff that they were not able to do that.

59. Xolalpa and Suber then informed Plaintiff that he was suspended pending investigation.

**PLAINTIFF INQUIRED IF HUMAN RESOURCES HAD REVIEWED HIS COMPLAINT OF RACE DISCRIMINATION**

60. Plaintiff then contacted Anna Giusto, Director of Human Resource Operations, and asked her if she had read the email that he had sent to Xolalpa on December 19, 2024, reporting the racial discrimination that he was subjected to at Defendant.

61. Giusto informed Plaintiff that she had not.

**GIUSTO INFORMED PLAINTIFF THAT SHE HAD REVIEWED HIS COMPLAINT, BUT DID NOT INVESTIGATE IT FURTHER**

62. A couple of days later, Giusto informed Plaintiff that she had reviewed his December 19, 2024 emailed complaint.

63. However, she did not attempt to obtain any additional information regarding his complaint.

**DEFENDANT TERMINATED PLAINTIFF**

64. On January 11, 2025, Plaintiff was called to attend a meeting at Defendant.

65. At the meeting, Giusto and Sharon Pinto, Director of Human Resources, terminated Plaintiff for the missing $140 from the night of December 31, 2024.

66. Plaintiff complained that he felt his termination was in retaliation for his complaint of race discrimination on December 19, 2024.

67. Upon information and belief, Defendant terminated Gardner for alleged policy violations after she had refused to support false allegations that Plaintiff had taken the $140.

**DEFENDANT DID NOT DISCPLINE OR TERMINATE WILFREDO FOR PUTTING CASH USED TO PAY THE BILL INTO THE TIP JAR**

68. Previously, Wilfredo was observed by a secret shopper taking the cash used to pay their bill and putting it directly in the tip jar.

69. The secret shopper reported this to management, but Defendant did not discipline or terminate Wilfredo.

**DEFENDANT IMMEDIATELY TERMINATED A CAUCASIAN EMPLOYEE AFTER A COMPLAINT OF RACE DISCRIMINATION WAS MADE**

70. In addition, previously in or around early October 2024, Defendant forced Charles Reges (Caucasian), Operations Support Resources, to resign after a complaint was made that he engaged in race discrimination by allegedly speaking in a demeaning tone to a guest.

71. Defendant took immediate action against Reges upon receiving the complaint against him.

72. Defendant discriminated against Plaintiff due to his race and retaliated against him for reporting the aforementioned discrimination in violation of Title VII, the PHRA and the PFPO.

73. Defendant's Conduct was willful or with reckless disregard to Plaintiff's Federal Statutory Rights.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

74. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

75. Plaintiff is a member of protected classes in that he is Caucasian.

76. Plaintiff was qualified to perform the job for which he was hired.

77. Plaintiff suffered adverse job actions, including, but not limited to termination.

78. Circumstances exist related to the above-cited adverse employment actions that give rise to an inference of discrimination.

79. Defendant discriminated against Plaintiff on the basis of race.

80. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

81. The reasons cited by Defendant for the above cited adverse employment actions that

Plaintiff suffered are pretext for discrimination.

82. Defendant's Conduct was willful or with reckless disregard to Plaintiff's Federal Statutory Rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – RACE DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

83. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

84. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his race (Caucasian).

85. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – RACE DISCRIMINATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

86. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

87. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his race (Caucasian).

88. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT IV – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

89. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.
90. Plaintiff engaged in activity protected by Title VII.
91. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.
92. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT V – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

93. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.
94. Plaintiff engaged in activity protected by the PHRA.
95. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.
96. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VI – RETALIATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

97. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

98. Plaintiff engaged in activity protected by the PFPO.

99. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

100. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Nicholas Boragi, requests that the Court grant him the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive Damages;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(h) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual

reasons cited for its adverse actions, disciplines, and termination; and

(i) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: November 4, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire (PA 90119)
Jordan D. Santo, Esquire (PA 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*